## FINK v. LEWIS.

Where a witness, to whom a question had been propounded, while under cross examination, for the purpose of impeaching his credibility by showing that he had been guilty of gross fraud on another occasion, notwithstanding the objections of the party by whom he was introduced, voluntarily answers it, and thereby admits his own turpitude, his answer cannot be excluded on the ground of irrelevance. It is important to enable the court to judge of the credit due to the testimony of the witness. *Per curiam :* No rule of evidence forbids a party to avail himself of the voluntary acknowledgement of a witness of the opposite party, to show the degree of credit due to his statements.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. *Hoffman,* for the appellant. *Elmore* and *W. W. King,* for the defendant. The judgment of the court was pronounced by

SLIDELL, J. This suit is brought upon a promissory note executed by the defendant in favor of *Thomas Powell,* which the plaintiff alleges he acquired after its maturity, by a sale under execution against *Powell.* The answer of the defendant contains two pleas :

1st. A plea of payment, to wit: that he placed in the hands of *Powell,* while the holder of the note, a large amount of Texas money to be sold to pay the note; and that *Powell* sold the money, while holder, for more than the amount of the note, which was thus extinguished. To this plea was annexed for reference a receipt signed by *Powell,* and bearing even date with the note, in which *Powell* acknowledges to have " received from *Lewis* $6,000 in Texas eight per cent bonds, which are to be disposed of at the best price that can be obtained for them, and the proceeds to be applied to the payment of the note," which is then described.

2d. That the plaintiff acquired no legal title to the note by the sheriff's sale.

The ground stated in the second plea has not been urged in argument before us, and we shall therefore dismiss it from our inquiry.

Before noticing a bill of exceptions, which has received our careful consideration, it is necessary to make some preliminary remarks which are pertinent to its examination.

*Powell* was the only witness by whom the defendant attempted to prove the execution of the receipt at the time at which it purports to be dated, and the verity of its statement. It appears by other testimony that *Powell* had been incarcerated by his creditors; that *Fink* had contributed to his incarceration; that he was much incensed at this and at the sale of his assets under execution, and that he had repeatedly declared that he would use every exertion and stratagem to be revenged. The question really at issue between the parties, and indispensable to the decision of the cause, was upon the receipt and the appropriation of the money, that is, whether the receipt was executed, and the facts therein stated took place, at the nominal date of the receipt, or whether it was executed subsequently to the acquisition of the note by the plaintiff, and for the fraudulent purpose of defeating a recovery upon the note. It appears that, among other assets sold under execution to the plaintiff, was a note of one *Ferguson,* for $2,000, to *Powell's* order, purporting to be dated June 1st, 1839, to which was appended a letter of credit, purporting to be addressed to *Powell,* and signed by *Peter W. Smith,* to the following effect:

" I hereby agree and obligate myself to stand responsible to you, for any faci-

FINK
v.
LEWIS.

lities which you may please render to my friend and relation, *James W. Ferguson*, which is not to exceed over five thousand dollars.

I am very respectfully,

Your obedient servant,

(Signed,)                              PETER W. SMITH.

To Mr. Thomas Powell.                  New Orleans, May, 1839."

*Fink* had brought suit upon this obligation against *Smith's* executor. On the trial of the cause, *Powell* became a witness for the defendant, and testified as follows: " That he knows that the letter of credit attached to the petition signed [*Sic* in record] by *Peter W. Smith*. The first time that deponent saw this document was a few weeks before *Peter Smith's* death. The first time he saw this document it was directed and addressed to *J. W. Stillwell*, or *Stillwell & Co.* Witness saw *Ferguson* cut off the address to *J. W. Stillwell*, or *Stillwell & Co.* and insert in lieu thereof that of *Thomas Powell*. This letter of credit was used two or three weeks before deponent heard of *Peter Smith's* death. Deponent never made advances, or gave any facility to *Ferguson* upon this letter of credit. The consideration of the note of *Ferguson* existed before witness saw the letter of credit, and before its date. Witness settled with *Ferguson* in the latter end of September, 1840, and the note of *Ferguson* was antedated, and dated as it purports to be. It was so antedated as to make it appear it was given on the letter of credit. Witness says he never knew there was such a man as *Peter W. Smith* before he saw this letter of credit. Witness says he has no interest in this controversy."

(Signed)                              THOMAS POWELL."

We now proceed to the consideration of the plaintiff's bill of exceptions. *Powell* was the defendant's witness, and was under cross-examination. The plaintiff exhibited to him a copy of his deposition in *Fink* v. *Carrett, Executor*, and asked him whether the said paper did not contain a true copy of his deposition made in that case, stating to the court that he made the inquiry for the purpose of showing the depravity of the witness, and thus impairing his credibility. The defendant thereupon objected to the introduction of said paper and to the question, upon the ground that the inquiry was irrelevant to the case, and not pertinent to any question asked in the examination in chief. While the matter was thus under argument, *Powell*, who had made no objection to the question, voluntarily answered it, declaring that the copy of his deposition exhibited to him was true and correct. The plaintiff still insisted that his question was admissible, and that the witness' voluntary answer should be received in evidence; but the court sustained the defendant's objection, and refused to permit the answer of the witness and the paper to go in evidence, and a bill of exceptions was accordingly taken.

We think the court erred. The object of the question was to show the turpitude of this witness, and thus weaken his credibility. *Powell* was the defendant's only witness to prove the alleged payment, and it was of great importance to the judge below, as it is to us, to know how far he could be trusted. If *Powell* had refused to answer, a different question would have been presented, which it is unnecessary now to decide. The voluntary answer of *Powell* is clearly pregnant with the acknowledgment that he had committed the acts stated in the affidavit, and consequently is utterly destructive of his own character as a man of honesty and truth. His conduct exhibits a mixture of turpitude and effrontery, which has been rarely witnessed in a court of justice. On

his evidence the judge of the court below was called upon, and we are now called upon, to say whether the note has been paid. The witness who tells us it has been paid, tells us at the same time voluntarily that he has committed a most gross fraud on another occasion. Our duty is the investigation of truth. This acknowledgment of the witness materially aids us in that inquiry, for it has satisfied the mind of every member of this court that, he is not a credible witness. We know of no rule of evidence which forbids the voluntary acknowledgment by a witness of his own turpitude, and prevents the opposite party, when that acknowledgment is made, from availing himself of it, for the purpose of estimating the witness' credibility.

It is proper to add that there are other circumstances in proof, besides the acknowledged turpitude of the witness, which appear to us suspicious. Among these are the discrepancy between the receipt itself, which authorizes *Powell* to dispose of the Texas bonds at the best rate that can be obtained for them, and *Powell's* declaration that he was limited not to sell them under seventeen cents, which limit he says he violated by selling at fourteen cents. Also the inconsistency between the fact that the note remained in *Powell's* hands, although he declares that, after the alleged sale, he rendered *Lewis* an account current showing a balance in *Lewis'* favor. Moreover, the defendant avers in his answer, not that, on a settlement of accounts, *Powell* had rendered an account current showing a balance in defendant's favor, nor that *Powell* had violated a stipulated limitation, but that he had sold the Texas money during the time he held the note, for more than the amount of the note. The body of the note and the receipt are both in *Powell's* handwriting, and he declares that the note and receipt were both given at the same time, and at the same place, to wit, at his house. These documents have been brought up in the original. We believe, on inspection of them, that they are upon different paper. They have not the appearance of being written with the same pen; the ink also presents a different appearance in the two instruments; and there is a greater tremulousness of the nerves indicated by the receipt than by the note.

From a careful consideration of the whole matter, our conclusion is that the plea of payment is not sustained by the evidence, and the plaintiff must therefore have judgment.

It is therefore decreed that the judgement of the court below be reversed; and it is further decreed that the plaintiff, *John D. Fink*, recover of the defendant, *Nathaniel Lewis*, the sum of $941 18, with interest at the rate of ten per cent per annum, from the 13th day of November, 1841, until paid, and costs in both courts, with privilege upon the property attached.